IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEMAYEL PEACOCK, M21585,              ) <br> ) <br> Plaintiff,       ) <br> ) <br> vs.                                                       ) <br> )     Case No. 23-cv-3587-DWD <br> WEXFORD HEALTH SOURCE,           ) <br> JOHN DOE,                                        ) <br> DAVID MITCHELL,                             ) <br> LATOYA HUGHES,                             ) <br> ) <br> Defendants.  ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Gemayel Peacock, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the Defendants have denied him adequate dental care including routine cleanings, a periodontal exam, or a root canal. He attributes his problems on a larger scale to corporate medical provide (Wexford), and to the Warden (David Mitchell) and Director of IDOC (Latoya Hughes). Plaintiff seeks compensatory and injunctive relief.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b).

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that at an unspecified time after his arrival at Pinckneyville, he began to experience bleeding of his gums when brushing, and he had pain and sensitivity to temperatures.  At the time, it had been over a year since his last dental exam.  (Doc. 1 at 5).  He submitted many requests, and in 2021, he was finally seen by Defendant John Doe Dentist.  The dentist performed x-rays, noted plaque on Plaintiff's teeth, and indicated he needed a root canal.  Plaintiff also explained his issues with bleeding, temperature sensitivity, and severe pain when eating.  He asked for a periodontal exam, but the dentist told him that Wexford and IDOC would not allow those exams and that Wexford "always takes shortcuts."  (Doc. 1 at 5-6).  Plaintiff also asked to be seen by a specialist for the root canal.

Plaintiff alleges that he was told he would be placed on the cleaning list, but for over 2.5 years he has been denied everything (periodontal exam, pain medication, a root canal performed by a specialist).  He alleges that he has suffered prolonged and unnecessary pain in the intervening years.

Plaintiff further alleges that his issues are linked to Wexford's widespread policies and customs of denying periodontal exams, access to specialists or dental care, and access

to timely surgery. He alleges in broad terms that the healthcare provided in IDOC has been heavily criticized in ongoing class action litigation (*Lippert*) and it has also been the subject of criticism in mainstream media. He claims Defendant Warden David Mitchell is responsible for the wide failings of the available care as a head of the prison and he personally knows of Plaintiff's situation because Plaintiff has sent him four letters. He further alleges Defendant Latoya Hughes is responsible for challenging policies and practices as the Director of IDOC, and she is aware of his issues from an emergency grievance, but she turned a blind eye to that grievance. (Doc. 1 at 7).

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Count 1:** **Eighth Amendment deliberate indifference claim against John Doe Dentist for refusing a periodontal exam, and for failing to provide any immediate treatment for Plaintiff's dental needs;**
>
> **Count 2:** ***Monell* claim against Wexford for failing to provide access to adequate dental care and for maintaining a policy or custom that prohibits periodontal care;**
>
> **Count 3:** **Eighth Amendment claim against Defendants Mitchell and Hughes for failing to address Plaintiff's own dental issues and for failing to ensure more timely and adequate dental care in the IDOC as a whole.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

### Claim 1

Plaintiff alleges that John Doe Dentist saw him many months after he filed requests for care. At the appointment, the dentist took x-rays, noted plaque on his teeth, and suggested that he needed a root canal. Plaintiff also asked for a periodontal screening, but the dentist informed him that Wexford would not approve that care. Ultimately, the dentist put him on the dental cleaning list and referred him for the root canal. Plaintiff alleges that although this occurred sometime in 2021, he still has not received any care.

An Eighth Amendment claim arising from the denial of dental care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* Here, Plaintiff appears to have identified a serious dental condition in so much as he alleges constant pain and sensitivity in his teeth, as well as the dentist's finding that he needed a root canal. However, Plaintiff has not identified any facts that tend to suggest that John Doe dentist personally acted with deliberate indifference towards his situation. By contrast, he alleges that the dentist performed x-rays and an exam and recommended both a cleaning and a root canal. These actions appear consistent with the diligent provision of care, rather than deliberate indifference.

There are two additional things to consider. First, Plaintiff alleges he asked for a periodontal exam, but the dentist declined to recommend this because Wexford would not approve it. Inmates are not entitled to demand specific care, so the dentist's declination to refer Plaintiff for a periodontal exam is not necessarily deliberate indifference unless the dentist actually believed that a periodontal exam was medically necessary or appropriate. The facts alleged do not suggest that the dentist felt at this juncture that such an exam was needed, so the Court will not infer deliberate indifference based on this specific request for a particular procedure.

Second, Plaintiff alleges that after he saw the dentist, an additional 2.5 years elapsed without care. While this suggests a breakdown in the dental care system at his facility, Plaintiff does not attribute these subsequent delays to John Doe dentist, and he does not allege he did anything to inform the dentist of this issue. As pled, it appears that the dentist saw Plaintiff, assessed him, and prescribed a course of care to be implemented at the prison. There are no allegations that tend to suggest John Doe dentist personally knew of a need to do more but failed to do more. Accordingly, Claim 1 against John Doe dentist will be dismissed for failure to state a claim.

**Claim 2**

Plaintiff further alleges that his problems in securing needed dental care have been caused by Wexford's ill-provision of services at his prison. Specifically, he challenges Wexford's widespread policies and customs of denying patients periodontal exams, and delaying or denying access to needed specialists, dental care, or surgery. (Doc. 1 at 6). Plaintiff alleges that as a result of Wexford's policies, he has been unable to

access needed care for more than 2.5 years—including a cleaning, a root canal, and a periodontal exam. Plaintiff bolsters his allegation of a policy or practice by his allegation that the dentist told him Wexford would not approve a periodontal exam, as well as an affidavit from a fellow inmate who alleges he has been denied a periodontal exam or care for similar symptoms (Doc. 1 at 19, Aff. Antoine E. Ridley). These allegations contribute to Plaintiff's theory that Wexford has maintained a custom or policy of inadequate dental care at his facility, which has personally deprived him of needed care. Although *Monell* claims are difficult to prove and require significant evidence, the Court finds that at this preliminary juncture, Plaintiff's allegations are clear and well-supported, and they are sufficient to proceed against Wexford on Claim 2.

**Claim 3**

In addition to Wexford, Plaintiff also faults Defendants Anthony Wills (the Warden) and Latoya Hughes (the Director of IDOC) for the lack of dental care. He alleges that these two have roles of authority that come with a duty to challenge customs and policies and to provide adequate care. There is no *respondeat superior* liability under § 1983, so a leadership role is insufficient to demonstrate personal liability of these defendants for Plaintiff's dental care issues.

Plaintiff attempts to provide a more individualized link between his situation and these defendants by alleging they have both been notified of his situation. As to Defendant Hughes, he alleges she has been made aware of his need for care via an emergency grievance, to which he alleges she turned a blind eye. Plaintiff provided the Administrative Review Board (ARB's) response to a July 2023 grievance about his dental

needs, which purports to be signed by Hughes. However, he did not provide the underlying grievance, so the Court cannot determine the extent of the notice that Hughes might have received about Plaintiff's situation from this single document. Generally speaking, the mere role of processing a grievance is insufficient to establish personal liability under § 1983, and high-level administrators are allowed to delegate the provision of medical care to medical staff. *See e.g., Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of a grievance by an official who did not cause the underlying conduct states no claim); *Hayes v. Snyder,* 546 F.3d 516, 527-28 (7th Cir. 2008) ("the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one.")

Given that Plaintiff's sole allegation is that Hughes was put on notice of his dental issues by an emergency grievance, the Court finds that he has not stated a sufficient claim against Hughes for personal involvement in any alleged harm. The mere processing of a grievance is generally insufficient to support liability under § 1983, and prison officials are allowed to defer to medical staff on medical issues, so the review of a single emergency grievance in this case, without any information about the contents of the underlying grievance, is insufficient to proceed against Hughes.

By contrast, Plaintiff alleges that he repeatedly notified Warden Mitchell of his need for care and sent at least four letters to Mitchell about his situation.[1] "An inmate's

---

[1] The Court notes that a letter-writing campaign to a high-level prison official is not always sufficient to form a basis for § 1983 liability, but here, given that the official was the Warden, and given the extent of delays that Plaintiff alleges—he will be allowed to proceed for the time being. *See, e.g., Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (a letter writing campaign to prison officials is not sufficient to create personal liability for a § 1983 claim).

correspondence to a prison administrator may ... establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015); *see also Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."). At this preliminary juncture, the Court reads the complaint broadly and assumes that the letters provided Mitchell with sufficient details about Plaintiff's situation to warrant some kind of response. Ultimately, this claim against Mitchell will rely heavily on the facts that are developed. If it becomes evident that Mitchell responded to the letters, and/or delegated investigation of the matter to medical professionals, or if it becomes evident he reasonably deferred to medical professionals, then Plaintiff may ultimately be unable to substantiate this claim. For now, Plaintiff will be allowed to proceed on Claim 3 against Defendant Mitchell, but not Defendant Hughes.

## Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel (Doc. 3). In his motion he did not indicate a level of education, but he alleged that he knows nothing about civil cases, and has always received legal assistance. (Doc. 3 at 2). His Motion is accompanied by correspondence with a variety of attorneys from whom he sought representation. (Doc. 3 at 3-4, 13-17). Plaintiff also included a memorandum in support of his request for

counsel wherein he explained his concerns about the complexity of his case, as well as the challenges faced attempting to litigate a case while incarcerated.

There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff has clearly attempted to retain his own counsel, but this is not the end of the inquiry. At this very early juncture, Plaintiff has done a sufficient job presenting his claims, and the next stages will involve the exchange of basic information and will not yet include any of the complex tasks for which Plaintiff expressed concern in his supporting memorandum. Based on the early status of this litigation, the Court will deny Plaintiff's motion without prejudice.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 2** of the Complaint (Doc. 1) survives against Defendant Wexford Health Sources, Inc., and **Claim 3** survives against Defendant David Mitchell. By contrast, **Claim 1** is dismissed as insufficient against John Doe Dentist and, **Claim 3** is dismissed as insufficient against Defendant Latoya Hughes. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants John Doe Dentist and Latoya Hughes, for failure to state a claim.

The Clerk of Court is **DIRECTED** to prepare for Defendants: Defendants Wexford Health Sources, Inc., and David Mitchell (individual and official capacities): (1) Form 5

(Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** without prejudice. Plaintiff's Motion to Proceed IFP (Doc. 2) is **DENIED** as **MOOT**. Plaintiff paid the filing fee in this matter, and stated that he only applied for IFP for the purpose of seeking counsel. While the Court appreciates this logic, it has denied the motion for counsel, so the IFP Motion is unnecessary at this time.

**IT IS SO ORDERED.**

Dated: January 3, 2024                     /s *David W. Dugan*
                                           _____
                                           DAVID W. DUGAN
                                           United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.