IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEMAYEL PEACOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-3587-MAB |
| | ) |
| WEXFORD HEALTH SOURCES, INC. | ) |
| and DAVID MITCHELL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Defendant Wexford Health Sources, Inc.'s motion seeking sanctions against Plaintiff Gemayel Peacock based on his refusal to participate in his deposition (Doc. 37; *see also* Doc. 38) and Plaintiff's motion for recruitment of counsel (Doc. 39).

### BACKGROUND

Plaintiff, an inmate in the Illinois Department of Corrections, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that he was denied constitutionally adequate dental care at Pinckneyville Correctional Center (Doc. 8; Doc. 1). More specifically, Plaintiff alleges that his gums bleed when he brushes and flosses, his teeth are sensitive to hot and cold foods and liquids, and he has pain that he rates as a six on a scare of one to ten (Doc. 1, p. 5). After making numerous requests and complaints, he was finally seen by the dentist in 2021 (*Id.*). The dentist performed x-rays, noted plaque on Plaintiff's teeth, and indicated he needed a root canal (*Id.*). Plaintiff alleges that he asked for a periodontal

exam, but the dentist told him that Wexford and IDOC would not allow those exams and that Wexford "always takes shortcuts." (*Id.* at pp. 5-6). Plaintiff also requested to be seen by a specialist for the root canal, which was denied, and he was not given any pain medications (*Id.* at pp. 5, 6). Plaintiff was told that he would be placed on the list for a cleaning, but as of the time he filed his complaint in November 2023, Plaintiff says he has been waiting for two and a half years and still has not been called (*Id.* at p. 6). Plaintiff claims that Wexford has widespread policies and customs of denying periodontal exams, access to specialists or dental care, and access to timely oral surgery (*Id.* at pp. 6, 7). He also claims that Warden David Mitchell is personally aware of Plaintiff's situation because Plaintiff sent him four letters and filed an emergency grievance, but Warden Mitchell "turn[ed] a blind eye" (*Id.* at p. 7). Plaintiff was permitted to proceed on the following claims:

> **Count 2**: *Monell* claim against Wexford for failing to provide access to adequate dental care and for maintaining a policy or custom that prohibits periodontal care;
>
> **Count 3**: Eighth Amendment claim against Warden David Mitchell for failing to address Plaintiff's dental issues.

(Doc. 8).

The scheduling order in this case granted Defendants leave to take Plaintiff's deposition (Doc. 31, p. 2).[1] Defendants were instructed that the Notice of Deposition must be served on Plaintiff at least two weeks prior to the date of the deposition (*Id.*). Plaintiff was instructed "that he must cooperate in the taking of his deposition . . . even if Plaintiff

---

[1] Federal Rule of Civil Procedure 30(a)(2)(B) requires leave of court to take a deposition if the deponent is confined in prison.

is not represented by counsel." (*Id.*). Plaintiff was explicitly warned that his failure to cooperate, "for example, refusing to answer appropriate questions, may result in sanctions, including the dismissal of this lawsuit." (*Id.*).

On March 23, 2025, Defendant Wexford's attorney noticed Plaintiff's deposition via Zoom Video Conference for exactly two weeks later on April 3, 2025 (Doc. 37-1). A copy of the Notice of Deposition was mailed to Plaintiff that same day (*Id.*). Defendant never received any objections from Plaintiff (*see* Doc. 37), nor were any filed with the Court. Plaintiff appeared via Zoom for the deposition as scheduled on April 3, 2025, along with Wexford's attorney, Defendant Mitchell's attorney, and a court reporter (*see* Doc. 38-1). As the deposition got underway, Plaintiff stated that the "jailhouse attorney," who had been "helping [him] with everything," was recently transferred, and he no longer had any assistance (*Id.* at pp. 5, 6). Plaintiff explained, "I'm not really certain as to what I need to do or what I have to do" (*Id.* at p. 5; *see also id.* at p. 6), and he wanted to see if the Court would recruit an attorney for him (*Id.* at p. 7). Defense counsel confirmed with Plaintiff that he did not have a pending motion for recruitment of counsel and also noted that the docket reflected Plaintiff was proceeding *pro se* (*Id.* at p. 6). After some further dialogue between Plaintiff and defense counsel, Plaintiff ultimately refused to participate in the deposition in order to see if he could get an attorney (*Id.* at p. 7). The deposition was then terminated (*see id.* at pp. 7–8).

By April 11, 2025, Plaintiff had yet to file a motion for recruitment of counsel, and Wexford filed its motion for sanctions (Doc. 37). Wexford asks the Court to order Plaintiff to reimburse it for the costs incurred for the deposition, including the court reporter's fee

and transcript preparation (Doc. 37). Wexford also asks the Court to stay the discovery deadline, which was April 25, 2025, until such time as Plaintiff could file a motion for counsel and a new deposition date could be set (*Id.* at p. 3). Wexford supplemented its motion on April 24, 2025, with the deposition transcript and invoice from the court reporter that had just been received (Doc. 38). Instead of filing a response to Wexford's motion, Plaintiff filed a motion for recruitment of counsel on May 8, 2025 (Doc. 39).

### A. WEXFORD'S MOTION FOR SANCTIONS (Doc. 37)

Wexford asks the Court to sanction Plaintiff pursuant to Federal Rule of Civil Procedure 11 for his refusal to answer questions at his properly noticed deposition (Doc. 37, pp. 1, 2). Rule 11, however, is not the proper vehicle for sanctions in this instance. Rule 11 applies only to representations in "*a pleading, written motion, or other paper*" that is filed with or submitted to the court and that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose. FED. R. CIV. P. 11(b), (c) (emphasis added); *Id.*, Advisory Comm. Notes to 1993 Amendment ("The rule applies only to assertions contained in papers filed with or submitted to the court."); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002) ("Rule 11 sanctions are limited to 'papers' signed in violation of the rule. Conduct in depositions . . . do[es] not fall within the ambit of Rule 11."); *S.E.C. v. Simpson*, 885 F.2d 390, 394 (7th Cir. 1989) ("Rule 11 sanctions are to be imposed by a district court when a pleading, motion, or other paper is signed in violation of the rule . . . ."). *See also Bartoli v. Richmond*, 215 F.3d 1329 (7th Cir. 2000) (Rule 11 sanctions can be imposed for "making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.")

(citation omitted); *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) (Rule 11 sanctions are "principally designed to prevent baseless filings.") (citation omitted). Here, Plaintiff's conduct in refusing to answer questions at his deposition did not involve the improper signing of a paper that was filed with or submitted to the Court. Rule 11 is therefore inapplicable.

In any event, the Court finds that sanctions are not warranted under the circumstances. The Court acknowledges that the Scheduling Order expressly authorized Defendants to depose Plaintiff and instructed Plaintiff that "he must cooperate in the taking of his deposition . . . *even if [he] is not represented by counsel*" (Doc. 31, p. 2). Plaintiff was also warned that his failure to cooperate could result in the imposition of sanctions (*Id.*). However, after carefully reviewing the transcript of Plaintiff's deposition, the Court believes that its admonitions were clouded by the exchange between Plaintiff and defense counsel, which gave the impression there would be no repercussions for refusing to participate. Specifically, after Plaintiff had said multiple times that he did not know what he needed to do and he wanted to see if the Court would provide him an attorney, defense counsel told him,

> "[Y]ou have two options here. One, you can choose to proceed with our deposition right now pro se; the second is you can make an official record stating that you refuse to participate in this deposition, and then, next, maybe you can file a motion to appoint counsel with the Court, but right now you don't have a motion to appoint counsel on the docket right now. Do you wish to proceed, or do you wish to state that you would refuse this deposition today?

(Doc. 38-1, p. 10).

Defense counsel did not indicate to Plaintiff that his desire for counsel did not excuse him from participating in the deposition and answering the questions posed to him (*see* Doc. 38-1).[2] Moreover, Defense counsel did not warn or even suggest to Plaintiff that if he refused to participate in the deposition, that Defendant would seek (or consider seeking) the imposition of sanctions against Plaintiff, which could mean that he may be on the hook for the costs of the deposition (*see* Doc. 38-1). Had Plaintiff been told any of these things, he might have reconsidered his refusal to participate in the deposition. In the Court's review of the transcript, it appears that Defense counsel made it seem as though refusing to participate was one of two perfectly acceptable options. Mindful of Plaintiff's pro se status and lack of civil litigation experience, and having carefully reviewed the deposition transcript, which lacks any suggestion that Plaintiff was acting in bad faith or for an improper purpose, the Court opts to give Plaintiff the benefit of the doubt that he acted on an erroneous, but seemingly sincere belief that his desire for counsel excused him from participating in his deposition.

For these reasons, Defendants' request for sanctions is denied. However, their request to stay the discovery deadline pending the resolution of the motion for sanctions is granted. The discovery deadline is now reset for August 1, 2025, so that Defendants can reschedule Plaintiff's deposition. Plaintiff is **ORDERED** to participate in the

---

[2] *See* FED. R. CIV. P. 30(b) (instructing that deponent can refuse to answer a question "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)"); *Id.* at 30(d)(3) (instructing that deponent can move to terminate or limit the deposition on the ground that it "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.").

deposition and answer defense counsel's questions. Plaintiff is explicitly **WARNED** that if he fails to appear for or cooperate with a properly noticed deposition, the Court may dismiss this lawsuit as a sanction and/or assess costs against him.

### B. PLAINTIFF'S MOTION FOR COUNSEL (Doc. 39)

Plaintiff states that his refusal to participate in the deposition "was not an act of defiance" but "was rooted in his desire to seek and obtain the requisite assistance needed to proceed effectively in this matter." (Doc. 39, p. 3). He says that he needs an attorney due to his "sever[ely] . . . limited understanding of the law" (Doc. 39, p. 2). He also says that conducting the necessary investigation and presenting evidence as "insurmountable task[s]" for a *pro se* litigant, but he does not offer any explanation as to why that is (*Id.*).

There is no right to counsel in a civil case, however, the district court has discretion to recruit counsel to represent an indigent *pro se* litigant. 28 U.S.C. § 1915(e)(1); *McCaa v. Hamilton*, 959 F.3d 842, 844 (7th Cir. 2020) ("*McCaa II*").[3] The Court finds, based on Plaintiff's motion for leave to proceed in forma pauperis filed at the outset of this case (Doc. 2), that he is indigent and unable to afford an attorney.[4] *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing 28 U.S.C. § 1915(e)(1)) ("In a civil case, the court has discretion to recruit counsel to represent a litigant who is unable to afford one."). The Court also previously determined that Plaintiff had met the threshold burden of showing

---

[3] A prior opinion in the same case, *McCaa v. Hamilton*, 893 F.3d 1027 (7th Cir. 2018), which is also cited to in this Order, is referred to as "*McCaa I*."

[4] Plaintiff paid the filing fee in full but filed his motion to proceed IFP for the purpose of seeking counsel (Doc. 2). The Court previously deemed the motion moot because Plaintiff's request for counsel was denied (Doc. 8, p. 11).

that he made a reasonable attempt to obtain counsel on his own (Doc. 8, pp. 8–9; *see* Doc. 3, pp. 3–4, 13–17). *See Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc) (threshold inquiry on a motion for counsel is whether the indigent plaintiff made a reasonable attempt to obtain counsel or was effectively precluded from doing so).

Thus, the question for the Court is "whether the difficulty of the case, factually, legally, and practically, exceeds [Plaintiff's] capacity as a layperson to coherently litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks at the type of claims being advanced, the stage of litigation, and all the tasks that normally attend litigation, including "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 491. The Court also looks at "the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations, and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* In other words, this inquiry is an individualized one based upon the record as a whole, the nature of the claims, and the plaintiff's ability to pursue his claims through all phases of the case. *Navejar,* 718 F.3d at 696.

While the Court is sympathetic to the difficulty of litigating a case without any legal education or litigation experience, that does not, in and of itself, warrant recruitment of counsel. A substantial majority of prisoners who are representing themselves in this District are in the same boat, and they would all benefit from having a lawyer. This District, however, has a relatively limited pool of attorneys available to take cases on a pro bono basis. Simply put, there are not enough attorneys to give one to every prisoner

who asks. The Court is thus forced to "ratio[n] [its] limited supply of free lawyer time," *Id.*, and to try to "identif[y], among a sea of people lacking counsel, those who need counsel the most." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014).

Plaintiff did not tell the Court what level of education he has (*see* Doc. 39; Doc. 3). He did not indicate that he has any issues with reading or writing (*see* Doc. 39; Doc. 3). Nor did he indicate that he has any significant mental illnesses or physical limitations (*see* Doc. 39; Doc. 3). Furthermore, the Court is unsure what type of communication skills Plaintiff has because there have been no hearings in this matter and, while all of Plaintiff's submissions have been well-written, it is the Court's understanding that they were all written by or with assistance from other inmates (*see* Doc. 1, p. 8; Doc. 38-1). The Court does not know what, if anything, Plaintiff has written on his own. Thus, it is all but impossible for the Court to meaningfully assess if Plaintiff himself is incapable of adequately communicating his position and making coherent, relevant arguments. *See McCaa v. Hamilton*, 893 F.3d 1027, 1033 (7th Cir. 2018) ("[C]ourts must specifically examine a plaintiff's personal ability to litigate the case, versus the ability of the 'jailhouse lawyer' who assisted the plaintiff.") (citation and internal quotation marks omitted).

With respect to the claims Plaintiff is advancing, the Seventh Circuit has recognized that deliberate indifference claims can be difficult and complex for *pro se* plaintiffs to handle on their own, *McCaa II,* 959 F.3d at 846, but that is not categorically true for all deliberate indifference claims. *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014) ("[N]ot every deliberate indifference case is so complex and beyond the individual plaintiff's capacity as to warrant the recruitment of counsel . . . ."). In this instance,

Plaintiff's claims appear to be relatively straightforward as far as deliberate indifference claims go. He alleges that when he saw the dentist in 2021, he was not given any treatment for his pain, sensitivity in his teeth, or bleeding gums. He further alleges that he experienced an unreasonable delay of over two and a half years in getting his teeth cleaned and getting a root canal that the dentist said he needed. These are basic concepts familiar to and within the realm of an average juror's knowledge and understanding. The Court has no reason to believe that expert testimony will be required to explain to a jury the dental conditions at issue, the need for treatment, or that the years-long delay Plaintiff experienced is problematic. *But see James v. Eli*, 889 F.3d 320, 330 (7th Cir. 2018) (case involved complex medical evidence where plaintiff's diagnosis and physician's findings were not "readily decipherable without specialized training"); *Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014) ("Henderson's case involves complex medical terms and concepts: kidney disease, end stage renal failure, creatine and blood urea nitrogen levels, 'out of range' lab results, and dialysis, to name a few.").

  Additionally, there is no indication that the evidence involves competing opinions from different medical professionals or varying recommended courses of treatment. *But see, e.g., Dewitt*, 760 F.3d at 658 (holding case was beyond pro se litigant's capacity because it involved complicated medical matters and varying recommended courses of treatment by numerous physicians and required discovery into what constitutes reasonable care for medical professionals). It also does not appear, and the Court has not been given any information that suggests, there are state-of-mind issues that may involve subtle questions too complex for a pro se litigant. *See Olson,* 750 F.3d at 711–12.

As for the phase of litigation, Plaintiff's request for counsel came near the end of the discovery phase of litigation.[5] Specifically, he sought counsel to represent him at his deposition. The Court, however, finds that Plaintiff is more than capable of being deposed without the assistance of an attorney. All he has to do is answer defense counsel's questions and tell his side of the story. He does not need to have knowledge of the law or to make complex legal arguments.

With respect to the discovery process more generally, the Court acknowledges that discovery involves a more complex set of demands than the pleading stage or the exhaustion stage. *See McCaa I*, 893 F.3d at 1032. Plaintiff did not, however, provide any information as to where things stand with discovery (*see* Doc. 39). The Court knows from a previous motion that Plaintiff served interrogatories on Wexford, which he said were not responded to in a timely manner (*see* Doc. 35). The Court presumes, however, this issue was resolved by the parties because Plaintiff did not file a subsequent motion to compel (*see* Doc. 36). Aside from that, the Court knows nothing about what other discovery Plaintiff has tried to conduct (if any), what degree of success he has had, whether he has encountered any obstacles in his pursuit of discovery, etc. *See, e.g., Dewitt*, 760 F.3d at 659. In other words, the Court has no idea if Plaintiff has been able to effectively participate in the discovery process or if he is incapable of identifying and collecting the right type of evidence to support his claims.

---

[5] Technically, Plaintiff did not file his motion for counsel until after the discovery deadline had passed (*see* Doc. 31, Doc. 39). However, as indicated above, the parties are being given an additional two months for discovery.

In sum, Plaintiff has failed to provide the Court with the type of specific information about himself and his abilities necessary for the Court to determine that the demands of the litigation exceed his capabilities. The Court will not assume as much based simply on Plaintiff's lack of litigation experience, the nature of his claim, and the stage of the proceedings. Accordingly, Plaintiff's motion for counsel is denied.

## Conclusion

Defendant Wexford Health Sources, Inc.'s motion for sanctions and motion to stay the discovery deadline (Doc. 37) is **GRANTED in part and DENIED in part**. It is denied as to the request for sanctions and granted as to the request to stay discovery. The discovery deadline is now reset for August 1, 2025, so that Defendants can reschedule Plaintiff's deposition. Plaintiff's motion for recruitment of counsel (Doc. 39) is **DENIED**. Plaintiff is **ORDERED** to participate in the deposition and answer defense counsel's questions, even though he does not have an attorney. Plaintiff is explicitly **WARNED** that if he fails to appear for or cooperate with a properly noticed deposition, the Court may dismiss this lawsuit as a sanction and/or assess costs against him.

**IT IS SO ORDERED.**

**DATED: July 1, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
